**FILED**

OCT 16 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

Carlos Dario Wilson
Plaintiff IFP Pro Se
77 Van Ness Avenue, Suite 101-1926
San Francisco, California 94102
415.707.9700
carloswilsonSF@gmail.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CARLOS DARIO WILSON,

    Plaintiff,

vs.

HORIZON ACTUARIAL SERVICES, LLC,

UNITE HERE LOCAL ~~UNION~~ 2

MIKE CASEY, ANAND SINGH

    Defendants

Case No.: **CV25    8909**    IFP

JURY TRIAL DEMANDED

~~SUMMONS AND~~ COMPLAINT

**TSH**

~~SUMMONS AND~~ COMPLAINT

## I.    INTRODUCTION

Plaintiff Carlos Dario Wilson ("Plaintiff" or "Wilson") brings this Complaint, acting *IFP Pro Se* against Defendant HORIZON Actuarial Services, LLC ("Defendant" or "HORIZON"), Unite Here! Local 2 and Mike Casey, former president of Unite Here, alleging damages stemming from a recent data breach and given his compelling information and understanding, investigation in settled case, through counsel, and the research by and personal knowledge of Plaintiff, a UC Berkeley researcher, Carlos D Wilson, on these matters.

~~SUMMONS AND~~ COMPLAINT - PAGE 1 – CASE NO. _____

## II. JURISDICTION AND VENUE

**JURUSDICTION**

1. This Court has original jurisdiction over this action because
   a. Plaintiff's cause of action and injury were raised in Northern California as an employee of Unite Here Local 2 who had contracted services for their employees with HORIZON and
   b. the amount in controversy exceeds $1 million exclusive of interest and costs, and,
   c. Plaintiff is a citizen of California as are three members of HORIZON's LLC.

2. This Court has general personal jurisdiction over HORIZON because these members of the LLC are California Residents:
   a. Cary Franklin, a citizen of California;
   b. Kathleen Coda, a citizen of California;
   c. Ron Littler, a citizen of California;

**PARTIES**

1) **Plaintiff - Carlos Dario Wilson**
   a. Plaintiff Carlos Dario Wilson is, and at all times relevant has been a citizen of these United States of America residing in both California and Ohio, and;
   b. Plaintiff was employed by LOCAL 2 in California, and;
   c. Plaintiff was the client of HORIZON by virtue of said employment in California, and;
   d. Plaintiff has been coerced into travel across 17 US States including California, and;
   e. Mr. Wilson intends to remain a citizen of California as his home of first return, and;
   f. Mr. Wilson is currently living as homeless in San Francisco, California as the result of the ongoing struggle to free himself from this criminal trafficking activity
      i. This leaves him particularly at risk in the open and vulnerable to attack
   g. DATA BREACH impacted the Plaintiff as a result of Plaintiff's employment at Unite Here Local 2 in San Francisco, California, and injury occurred largely in California and Ohio.

SUMMONS AND COMPLAINT - PAGE 2 – CASE NO. _____

i.  Plaintiff received a "Notice of DATA BREACH" letter at his Ohio Family's address dated April 8, 2022 on April 14, 2022.

ii.  The letter notified Plaintiff that on November 10 and 11, 2021, two of HORIZON's computer servers were accessed by unauthorized actors and certain PII was included in the files that were accessed including Plaintiff's name, date of birth and Social Security number.

2)  **Defendant HORIZON Actuarial Services, LLC**

    a.  Defendant HORIZON Actuarial Services, LLC is organized under the laws of Delaware and has a principal place of business in Atlanta, Georgia. The members of HORIZON as an LLC are the following individuals:

        i.  Stan Goldfarb, a citizen of Maryland;

        ii.  MaryAnn Dunleavy, a citizen of Maryland;

        iii.  Cary Franklin, a citizen of California;

        iv.  Kathleen Coda, a citizen of California;

        v.  Ron Littler, a citizen of California;

        vi.  Mark Lewis, a citizen of Georgia;

        vii.  Nathan Slaff, a citizen of Georgia; and

        viii.  Tom Cliffel, a citizen of Ohio.

## III.    SUMMARY OF THE CASE

1.  This action arises from a recent cyberattack and resultant DATA BREACH of personal, private and sensitive information regarding the Plaintiff in the possession, custody and/or control of Defendant, HORIZON Actuarial Services, LLC ("DATA BREACH"), which in turn made possible violent stalking cyber stalking, witness intimidation, obstruction, harassment, rape, torture and the human trafficking by third party actors believed to be the agents and associates of former Unite Here! Local 2 (LOCAL 2) leader, Mike Casey (CASEY).

a.  Defendant HORIZON has previously reached settlement with a class of litigants in case Sherwood, et al. v. Horizon Actuarial Services, LLC, Case No. 1:22-cv-01495-ELR, in the U.S. District Court for the Northern District of Georgia. ("SHERWOOD")

b.  In that case Plaintiffs' and Class Members' claims against Horizon arise from the cyber security incident at issue in this litigation

c.  This case arises from a cyber security incident (the "Data Security Incident") that Plaintiff alleges compromised the security of their personally identifiable information ("PII").

d.  After Horizon Actuarial announced the Data Security Incident, several class action lawsuits were filed by Plaintiffs throughout the country, then eventually filed as a Consolidated Class Action Complaint on July 13, 2022 ("Complaint") against same Defendant.

e.  That Complaint alleged, and we herein reincorporate and allege the following seventeen (10) claims, including:

    i.   Negligence and negligence per se,
    ii.  unjust enrichment,
    iii. invasion of privacy
    iv.  violation of the California Consumer Privacy Act,
    v.   violation of California's Customer Records Act,
    vi.  violation of the unlawful and unfair prong of California's Unfair Competition Law, and,
    vii. violations of O.C.G.A. § 13-6-11, culminating in RICO and TVPRA violations, both severe and ongoing.

f.

g.  The Complaint alleges that in November of 2021, Defendant experienced a data security incident in which unauthorized third parties gained access to its file server.

h.  Following discovery of this Data Security Incident, Defendant began investigating the scope and cause of the incident and determined that files containing Plaintiffs' and Settlement Class Members' names, Social Security numbers, benefit plan data, and dates of birth had been included

2.      The DATA BREACH resulted in unauthorized disclosure, exfiltration, and theft of Plaintiff's highly personal information called personal identifying information ("PII"), including name, Social Security Number, date of birth, contact and medical data, username and password.

3.      The DATA BREACH occurred on or about November 10th and 11th of 2021

4.      Defendant began the process of notifying the victims in this data security incident on January 13, 2022, though some Settlement Class Members were not notified until June 9, 2022.

           i.    Plaintiff, Mr. Carlos Dario Wilson, realizing that his damages were unique and far greater than the other potential members of the class, promptly opted out in writing within the notifications deadlines.

5.      HORIZON did not begin, according to their reports, to inform those affected until on or about January 13, 2022, with some notifications arriving much later.

           i.    In this case, the Plaintiff did not receive his Notice of Data Incident from HORIZON until on or about April 13, 2022 – 5 months after the DATA BREACH occurred.

6.      During this time, Plaintiff was not yet fully aware that his sensitive personal identifying information had been compromised,

     a.    This allowed significant time to pass in which bad actors were able to take the lead in a criminal conspiracy to slander, discredit, stalk, harass, threaten to kill and torture Plaintiff until he succumbs to their violence in a terribly troubling human trafficking scheme

     b.    This with the purpose and intent to steal his identity and defraud he and his family of his retirement investment accounts and his family's estates.

7.      The delay left the Plaintiff vulnerable and unaware that there were, as there continue to be, not only a significant risk of identity fraud and various other forms of personal, social, and financial harm, but also real risk to life and limb.

SUMMONS AND COMPLAINT - PAGE 5 – CASE NO. _____

8.    After extensive arm's-length negotiations, the Parties negotiated a Settlement that provides significant relief for Plaintiffs and the Class Members they represented. [1]

## IV.  FACTUAL BACKGROUND

1) **HORIZON ACTUARIAL SERVICES, LLC**

   a)  HORIZON began offering its actuarial services for multiemployers and Taft- Hartley plans on February 1, 2008. It boasts that is provides "superior actuarial and consulting services to multiemployer benefit plans – first as the Wyatt Company, then as Watson Wyatt, and now as HORIZON Actuarial Services, LLC."[2]

   i)  Furthermore, HORIZON provides "a wide array of services related to defined benefit pension plans, including annual actuarial valuations, PPA compliance, plan design, asset-liability modeling, actuarial reviews, and merger and spin-off studies."

2) **THE DATA BREACH**

   a)  As detailed more fully below, HORIZON failed to safely and securely store the PII entrusted to it and failed to prevent it from being compromised during the DATA BREACH.

   i)  HORIZON's website includes a link titled Notice of Data Incident.

   (1)  The link states that HORIZON "is providing notice of a data privacy incident on behalf of itself and the benefit plans listed below to whom HORIZON Actuarial provides technical and actuarial consulting services (the 'Plans').

   b)  HORIZON Actuarial received and collected information regarding plan participants and their family members for business and compliance purposes.

   i)  Those benefit plans include:

   (1)  Teamsters Local 1034 Pension Fund

   _____

   [1] Case 1:22-cv-01495-ELR Document 70-1 Filed 09/20/23 Page 7 of 43

SUMMONS AND COMPLAINT - PAGE 6 – CASE NO. _____

(2) UA Local 198 Pension Fund, UFCW & Employers Benefit Trust

(3) UFCW Comprehensive Benefit Trust

(4) United Union of Roofers Burial Benefit Fund.

(5) And most relevant to this case at hand, Unite Here Local 2, San Francisco, the Plaintiff's former employer.

c) HORIZON's website confirmed [2] PII was included in the DATA BREACH:

   i) "The investigation revealed that two HORIZON Actuarial computer servers were accessed without authorization for a limited period on November 10 and 11, 2021. "

   ii) The hackers provided a list of information they claimed to have stolen.

      (1) The types of information impacted may include names, dates of birth, Social Security numbers, and health plan information.

d) Acknowledging deficiencies in its cybersecurity policies and procedures. HORIZON had to implement additional security "measures to protect against similar incidents moving forward."

e) HORIZON, given the highly sensitive nature of the PII it possessed and the sensitivity of the actuarial services it provides, had a duty to safeguard, protect, and encrypt Plaintiff's PII.

3) **LOST DATA LED DIRECTLY TO ATTACK**

a) DATA BREACH's led to Identity Theft, Identity Fraud, Cyber Stalking and Harassment culminating in Corrupt Business Practices and Human Trafficking and further Cognizable Injuries.

   i) The PII of consumers, such as Plaintiff, is valuable and has been commoditized in recent years.

   ii) Defendant was at all times fully aware of its obligations to protect Plaintiff's PII because of its business model of collecting PII and storing such information for the purpose of administering actuarial services for pecuniary gain.

   iii) Defendant was also aware or should have been aware of the significant repercussions that would result from its failure to do so.

---

[2] https://www.HORIZONactuarial.com/notice-of-data-incident.html (last visited on Apr. 17, 2022).
SUMMONS AND COMPLAINT - PAGE 7 – CASE NO. _____

(1)  Up to and including, as in this case, bodily harm, stalking and account takeovers as the public has recently been warned by IC3[3]:

> In Account Takeover Fraud (ATO), cyber criminals deliberately gain unauthorized access to a victim's online bank, payroll, health savings or social media account, with the goal of stealing money or information for personal gain. Cyber criminals may gain access to a victim's online account through a variety of methods:...
>
> **Data breaches**
>          A cybercriminal obtains victim's login credentials from past data breach or criminal forums that sell data breach data on the dark web marketplaces.

IC3 goes on to add:

> Cyber criminals then use the captured credentials to gain full access to the victim's financial account. If a bank account is compromised, cyber criminals can transfer money from the accounts. If an employer payroll account, health savings account, or retirement account is accessed, the cybercriminal can change the direct deposit information in the real site and redirect funds. If cyber criminals gain access to full personally identifiable information (PII) for victims, they can also create new account relationships, including loans or accounts that defraud victims.

b)  HORIZON knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its data security were breached. HORIZON failed, however, to take adequate cybersecurity measures to prevent the DATA BREACH from occurring.

_____

[3] https://www.ic3.gov/CrimeInfo/AccountTakeover

### IV.    HARMS AND LOSSES INCURRED

1.    The unique harms and intense realized losses Plaintiff Wilson has suffered relative to the Class in the *Sherwood* move the Plaintiff to seek redress as an individual litigant on the full set of the original claims in Sherwood applicable to California and Ohio law.

2.    These harms include actualized losses that Class members feared might happen- actual incidents of personal bodily harm resulting from the receipt by bad actors of this information and their subsequent use of said PII to access his accounts, track his whereabouts and terrorize him, including:

    i.    Sexual Assault, Assault and Battery, and Rape.

    ii.    Online crimes such as hacking, monitoring, stalking cyber bullying and,

    iii.    Unauthorized access by use of this data to other sensitive financial accounts in which he held securities and savings, such as San Francisco Federal Credit Union, Merrill Lynch, Fidelity Investments, US Bank, Wells Fargo, Bank of America, ING, Cash App, PayPal and others.

    iv.    similarly unauthorized access to government accounts including:

        1.    the federal government website for Social Security with which his financial means of survival was threatened and could be cut off, and;

        2.    the United States Postal Service, with which tracking numbers could be leveraged to intercept and obstruct any legal process he might avail himself of, including:

            a.    Inbound court orders and notices to appear and,

            b.    Outbound, more than 40 lawful subpoenas seeking information in his favor in related cases.

        3.    The San Francisco Public Library

            a.    Again obstructing justice by limiting and censoring his access to and printers

        4.    The Ohio Bureau of Motor Vehicles

            a. Securing a renewed Ohio Driver License, presumably with their own picture and the Plaintiff's PII

    v. Human Trafficking as defined by the TVPRA in which assailants were able to track harass monitor, coerce by fear and deceit and falsely imprison our Plaintiff by leveraging this data to infiltrate his live GPS tracking data, cameras, speakers, microphones and Wi-Fi/Bluetooth broadcasting capabilities - such as the ones found in the average mobile phone, tablet or laptop.

        1. With fraud, lies and coercive threats to his person and family[4] disseminated through these devices and by the live stalking of Mr. Wilson's person using his GPS location data, traffickers were successfully able to transport, maintain, harbor and tender receipt of Plaintiff[5], allowing them access to, by similar hacking, his financial accounts through which they have been able to launder and steal millions of dollars from a variety of sources[6] including his own retirement account and his grandparent's and parent's estates.

3. HORIZON failed to secure, monitor, and maintain the PII provided to it by its customers and business associates in a reasonable manner at par with industry standards, as evidenced by this DATA BREACH

4. The DATA BREACH resulted in unauthorized access, download, exfiltration, dissemination and misuse of the PII by coordinated hackers - criminals who targeted that information in furtherance of their wrongdoing.

5. Unique to this case (as opposed to the class members in the SHERWOOD Class Action) the hackers who used the Plaintiff's data in their criminal acts were organized, targeted and ruthless online trolls and stalkers who used the data to advance a perceived grudge against the Wilson family from the web

---

[4] TVPRA element of MEANS
[5] TVPRA element of ACTS
[6] And finally, TVPRA element of PURPOSE
SUMMONS AND COMPLAINT - PAGE 10 - CASE NO. _____

1    to his real-life back door, across the country to his family's Ohio home and back, crossing 17 states in

2    their trafficking pattern.

3    6.    The full extent of the types of PII, the scope and the root causes of the DATA BREACH are all within

4    the exclusive control of Defendant and agents, counsel, and forensic security vendors at this phase of

5    the litigation leaving open the possibility of unforeseen consequence in terms of the usefulness of the

6    PII still readily available on the Dark Web.

7    7.    By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff, HORIZON assumed

8    legal and equitable duties to Mr. Wilson, and knew or should have known that it was responsible for

9    safeguarding and protecting Plaintiff's PII from unauthorized access, disclosure, and theft due to

10    criminal hacking activity.

11    8.    The Plaintiff intends to demonstrate that Defendant is responsible for allowing this DATA BREACH

12    because of multiple acts of negligence including but not limited to its:

13        i.    failure to design, implement, and maintain reasonable and adequate data security systems

14          and safeguards;

15        ii.    including but not limited to a lack of encryption;

16        iii.    and/or its failure to exercise reasonable care in the hiring, supervision, and training of its

17          employees, agents, and vendors;

18        iv.    and/or its failure to comply with industry-standard data security practices;

19        v.    and/or its failure to comply with state and federal laws and regulations that govern data

20          security and practices which are intended to protect the type of PII at issue in this action.

21

22    9.    In this era of frequent data security attacks particularly in the financial information sector and the

23    widely understood risks presented by online trolls, sexual predators, stalkers and fraudsters, the

24    Defendant's failures leading to the DATA BREACH are uniquely egregious, in that making available

25    to unscrupulous actors the identity of this particular Plaintiff and thereby making possible the

26    exploitation of his person, business, retirement savings and securities, his family estates, and his

27    credentials as artist and UC Berkeley activist present unique monetary values, not readily quantified by

28    settlement calculus;

SUMMONS AND COMPLAINT - PAGE 11 – CASE NO. _____

i.   as this DATA BREACH was highly foreseeable and the consequences nothing short of life-threatening, traumatic and enduring specifically for this Plaintiff, and;

ii.   because of the value uniquely inherent in Mr. Carlos Wilson as the locally beloved street artist, Sol Mission, and;

iii.   Because of the unique thinking and resultant intellectual and artistic property Mr. Wilson and Sol Mission regularly generate as a local voice for the people of San Francisco vis-à-vis their shared work as artists, activists, authors and researchers.

iv.   And lastly, but not to be forgotten, his years in academia and his training as a researcher as a Regents and Chancellor's Scholar at UC Berkeley

10.   As a direct and proximate result of the DATA BREACH, Plaintiff

i.   has suffered,

ii.   continues to suffer now,

iii.   is now imminently and for years to come at a significant future risk of further identity fraud, financial fraud, and other types of fraud.

iv.   Is potentially a continued target for human traffickers and the violence that accompanies their illegal activities

v.   Will require therapy with mental health professionals and likely physical rehabilitation related to the attacks caused by persons armed with the Plaintiff's PII.

11.   As a direct and proximate result of Defendant's data security failures and the DATA BREACH, Plaintiff has suffered actual, concrete, and imminent injuries, both physical and financial. These injuries include:

i.   Actual physical harm - because of the DATA BREACH, the Plaintiff, Mr. Wilson, has been susceptible to the following all made real by the proliferation of Wilson's PII and the subsequent gamifying of the search for his previously secret pseudonym, Sol Mission

ii.   the tracking of his person and electronic devices which has resulted in

a.   multiple drive-by shootings,

b.   home invasions, made possible by knowledge of his presence and absence from his homes,

SUMMONS AND COMPLAINT - PAGE 12 – CASE NO. _____

           c.   two assaults with a deadly weapon, and

           d.   a range of lesser crimes

  iii.  The lost, infringed upon and otherwise diminished value of Plaintiff's PII;

  iv.  Out-of-pocket expenses are still compounding associated with

           a.   the prevention, detection, and recovery from identity theft,

           b.   probate fraud,

           c.   escheatment or state Unclaimed Property fraud, and/or

           d.   unauthorized use of their PII in more traditional ways such as obtaining credit or services.

  v.  The many lost opportunity costs associated with attempting to mitigate the actual consequences of the DATA BREACH, including but not limited to

        1.  lost time,

        2.  lost personal property,

        3.  lost real estate and,

        4.  a lost flower farming business in full bloom;

  vi.  The Loss of Consortium of his remaining family members, including his father and brother with whom he had grown close and to whom he was blamed for the swirl of illegal activities described in this case that were required by his aggressors to maintain his captivity as a neo-slave and subsequently estranged the Plaintiff from his family.

  vii.  The continued increased risk to the future of Plaintiff's PII, which remains unencrypted and available for unauthorized third parties to access and abuse;

  viii.  the invasion of privacy so pervasive as to expose without his authorization every minute and personal detail of his daily life including:

        1.  Prescriptions – Private medical data that these critical data points has unlocked for any bad actor with an internet connection.

        2.  Pins and Passwords

        3.  Postal shipments and transactions

        4.  Private intimate activity

ix. the compromise, disclosure, theft, and unauthorized use of Plaintiff's PII; and,

x. emotional distress, trauma, fear, anxiety, public embarrassment, nuisance and annoyance related to the theft and compromise of their PII and

xi. the resultant trolling, stalking, coercion and torture inherent in Human Trafficking across US state lines.

b. The described Stalking and harassment activities would have been nearly impossible at the level carried out by these traffickers but for the DATA BREACH

    i. Using stolen PII from the DATA BREACH to infiltrate his cellular connections, they were able to locate and track him via GPS;

        1. reducing a resource consuming search for him to a single mouse click,

    ii. Then by focusing high-definition microphones and directional speakers towards him, all manner of his personal and private affairs and activities could them be observed, exploited and ridiculed –

        1. and even rebroadcast to a paying audience of perverts bent on torture,

        2. Bad actors were able to infiltrate his life to the level of an inmate at Abu Ghraib – monitoring and describing even his bowel movement as they happened.

    iii. So horrifying was the isolation, torture and loss of privacy, the victim, Mr. Carlos Wilson has frequently described the experience as worse than being killed, saying "at least that happens only once – this is like dying 1000 times a day."

SUMMONS AND COMPLAINT - PAGE 14 – CASE NO. _____

# PRAYER FOR RELIEF

Plaintiff seeks to remedy these harms and prevent any future physical and/or data compromise caused by the personal data that was stolen as a result of the DATA BREACH and remains at risk due to inadequate data and personal security.

1.    As Plaintiff has a continuing interest in ensuring that

    a.    his information is and remains safe, and

    b.    his person is and remains safe from further exploitation.

    We therefore believe Mr. Wilson should be entitled to

        1.    actual damages,

        2.    punitive damages,

        3.    injunctive relief,

        4.    and other equitable relief as The Court deems fit.

Respectfully Submitted.

CARLOS Dario Wilson

Dated this Tuesday, October 14, 2025.

_____
Defendant Pro Se - Carlos Dario Wilson

SUMMONS AND COMPLAINT - PAGE 15 – CASE NO. _____