UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS DARIO WILSON,<br><br>        Plaintiff,<br><br>    v.<br><br>HORIZON ACTUARIAL SERVICES,<br>LLC, et al.,<br><br>        Defendants. | Case No.  25-cv-08909-EMC<br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION TO DISMISS**<br><br>Docket No. 17 |

Plaintiff Carlos Dario Wilson, proceeding pro se, has filed suit against Defendants Horizon Actuarial Services, LLC ("Horizon"); Unite Here, Local 2 ("Union"); Mike Casey; and Anand Singh.[1]  In his complaint, Mr. Wilson alleges that he was formerly an employee of the Union; that the Union contracted with Horizon to provide certain services to Union employees; that Horizon suffered a data breach; and that Mr. Wilson was injured a result.[2]  According to Mr. Wilson, the data breach "made possible violent stalking[,] cyber stalking, witness intimidation, obstruction, harassment, rape, torture and the human trafficking by third party actors believed to be the agents and associates of former Unite Here[] Local 2 . . . leader, Mike Casey."[3]  Compl., ECF Page 3.  He

___

[1] Mr. Casey, as alleged, is the former president of the Union.  Mr. Singh appears to be the current president.

[2] As alleged by Mr. Wilson, a class action was brought against Horizon because of the data breach. *See Sherwood, et al. v. Horizon Actuarial Services, LLC*, No. 1:22-cv-01495-ELR (N.D. Ga.). That lawsuit settled, but Mr. Wilson opted out of the class action settlement.

[3] Attached as Exhibit C to the complaint is a letter written by Mr. Wilson.  In the letter, Mr. Wilson seems to claim that the alleged wrongdoers are, in fact, family members and others associated with them.  *See* Compl., Ex. C (ECF Page 3-4).  Mr. Wilson brought a separate lawsuit making similar charges; that case has been dismissed.  *See Wilson v. Tahbazof*, No. C-23-5624 TLT (N.D. Cal.).

also indicates that the goal of the "bad actors" was "to steal his identity and defraud [him] and his family of his retirement investment accounts and his family's estates." Compl., ECF Page 5; *see also* Compl., ECF Pages 9-10 (referring to his own financial accounts held with "San Francisco Federal Credit Union, Merrill Lynch, Fidelity Investments, US Bank, Wells Fargo[,] Bank of America, ING, Cash App, PayPal and others" as well as his "grandparent's and parent's estates").

In January 2026, Horizon – one of the named defendants – moved to dismiss Mr. Wilson's case. After Mr. Wilson failed to file an opposition to the motion, the Court ordered Mr. Wilson to show cause as to (1) why his claims against Horizon should not be dismissed for failure to prosecute or for the reasons argued in Horizon's motion; and (2) why his claims against the remaining defendants should not be dismissed for failure to prosecute and/or lack of subject matter jurisdiction (*i.e.*, the same issues raised by Horizon in its motion to dismiss). *See* Docket No. 22 (Order at 3).

Mr. Wilson timely filed a response to the order to show cause ("OSC"). Accordingly, the Court hereby **DISCHARGES** the OSC but proceeds to the merits of the issues raised in Horizon's motion (which as noted above apply to the remaining defendants).

## I.     DISCUSSION

The Court agrees with Horizon that it lacks subject matter jurisdiction over Mr. Wilson's complaint. There is no diversity jurisdiction because complete diversity is lacking: both Mr. Wilson and Horizon are citizens of California. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that an "LLC is a citizen of every state of which its owners/members are citizens"); Compl., ECF Page 3 (alleging that some of Horizon's members are citizens of California). As for federal question jurisdiction, Mr. Wilson has not clearly pled any federal claim. He mentioned only in passing two federal statutes (RICO and the Trafficking Victims Protection Reauthorization Act ("TVPRA")) in asserting a claim for a violation of a Georgia statute. *See* Compl., ECF Page 4 (alleging "violations of O.C.G.A. § 13-6-11, culminating in RICO and TVPRA violations, both severe and ongoing").

In his response to the OSC, Mr. Wilson indicates that he intends to file a first amended complaint in which he will expressly plead a claim for violation of the TVPRA, which "prohibits

2

United States District Court
Northern District of California

the sex trafficking of children or adults by force, fraud, or coercion." *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021). Mr. Wilson no longer has the ability to amend as a matter of course. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, . . . 21 days after service of a motion under Rule 12(b) . . . , whichever is earlier."). Thus, he would have to seek leave of the Court to amend to assert a claim for violation of the TVPRA.

The Court has considered the allegations made in Mr. Wilson's response to the OSC regarding the TVPRA claim. Based on those allegations, the Court shall not permit amendment because amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 32 (9th Cir. 2008) (providing that a court "may deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment'"); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (noting that "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend").

Under the TVPRA,

> [a]n individual who is a victim of a violation of this chapter [related to, *inter alia*, trafficking in persons] may bring a civil action against the perpetrator (**or** whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) . . . .

18 U.S.C. § 1595(a) (emphasis added). In other words, a trafficking victim is able to sue either the perpetrator of the trafficking (direct liability) or one who knowingly benefits financially from the trafficking (beneficiary liability). *See Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx), 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021).

For purposes of this order, the Court assumes that Mr. Wilson is a victim of trafficking as covered by the TVPRA. In his papers, Mr. Wilson suggests that it is "possible" that Horizon, as well as the Union and its leaders, are "behind the actual exploitation," Resp. to OSC at 16-17, but

he does not press this theory of direct liability under the TVPRA.  Even if he had, Supreme Court authority requires plausibility, not possibility, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"; plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"), and Mr. Wilson has not made any nonconclusory allegations to suggest that any Defendant is a trafficking perpetrator.[4]

Mr. Wilson's position instead is that Defendants are liable for a violation of the TVPRA under the beneficiary theory.  *See* Resp. to OSC Resp. at 16-17 (asserting that "at [a] minimum [Defendants] knowingly benefitted").  The Ninth Circuit has stated that, for beneficiary liability, a plaintiff must show that the defendant "(1) knowingly benefitted, (2) from participation in a venture . . . , (3) which they knew or should have known was engaged in conduct that violated the TVPRA."  *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022) (stating that, for beneficiary claim, plaintiff must show that defendant); *see also G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544, 553 (7th Cir. 2023) (stating that, "[u]nder a theory of participant [*i.e.*, beneficiary] liability, a plaintiff . . . must allege and ultimately prove that (1) a venture has engaged in an act in violation of Section 1591, (2) the defendant knew or should have known that the venture had violated Section 1591, (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation"); *Red Roof*, 21 F.4th at 719 (noting that, "to state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to

---

[4] *See also Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (stating that "the federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion") (internal quotation marks omitted).  *Accord Tessema v. EPA*, No. 1:20-cv9700-MKV, 2021 U.S. Dist. LEXIS 121176, at *7-8 (S.D.N.Y. June 29, 2021) (noting that, at 12(b)(6), a court "has the authority to dismiss a complaint, even when the plaintiff has paid the filing fee, if it determines that the action is frivolous[;] [a]n action is frivolous when [e.g.] the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy") (internal quotation marks omitted).

the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff"); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, at *2 (N.D. Cal. Oct. 28, 2020) (stating that the elements of a TVPRA claim based on beneficiary liability are as follows: "each defendant (i) knowingly benefitted from (ii) participation in a venture (iii) which it knew or should have known was engaged in trafficking [the plaintiff]").

Here, Mr. Wilson has failed to show any of the above elements.  For example, for Horizon, Mr. Wilson contends that Horizon had access to his personally identifiable information ("PII") (through the services it provided to the Union), that Horizon benefitted from his PII (he does not clearly allege how), that Horizon failed to protect his PII, that his PII was stolen as a result (*i.e.*, through the data breach), and that the data breach was what led to the sex trafficking.  *See, e.g.*, Resp. to OSC at 16-17 (asserting that it is "possible" that Horizon, Local 2, and their leaders are "behind the actual exploitation, at [a] minimum they knowingly benefitted from Plaintiff's data which they then failed to protect[;] [t]hat failure resulted in an obvious acceleration of violence and exploitation via online hacking on or about the time of the Horizon data breach"); Resp. to OSC at 7 (asserting that, "[d]ue to the Horizon data breach, the Plaintiff's personally identifiable information ('PII') was compromised, in November 2021 . . . . During that same time period he began experiencing a new level of intrusion as his extensive digital life . . . was completely opened up and exploited by a hacking team obviously armed with new data").  But these allegations – at best – simply lay out a causal connection between Horizon's failure to act and the sex trafficking.  For beneficiary liability under the TVPRA, more is required: Horizon must have participated in the venture, must have knowingly benefitted from the participation, and must have known or should have known that the venture was engaged in conduct that violated the TVPRA.  Mr. Wilson has alleged, *e.g.*, that Horizon benefitted from his PII, *see, e.g.*, Resp. to OSC at 9 (asserting that "Horizon had knowingly benefited by way of the PII and its core functions in their business model"), but, for a TVPRA violation, the benefit from have come from the participation in the venture related to sex trafficking.  *See G.G.*, 76 F.4th at 559 ( "We read 'participation' in accord with our 'ordinary understanding of culpable assistance to a wrongdoer,' which requires

5

only 'a desire to promote the wrongful venture's success . . . .'"); *id.* at 563 ("[W]e read Section 1595(a)'s standard of knowing benefit from participation in a venture that has violated Section 1591 to require more than . . . 'mere passive nonfeasance' or an 'arm's length, passive, and largely indifferent' relationship with the criminal."); *cf. Doe v. Apple Inc.*, 96 F.4th 403, 411 (D.C. Cir. 2024) (stating that beneficiary liability "mirrors the aiding and abetting liability long established at common law"; "[l]ike aiding and abetting liability, the TVPRA requires (1) a wrongful act that causes an injury . . . ; (2) knowledge, as the defendant must knowingly benefit; and (3) substantial assistance, namely participation in the 'venture'").

To the extent Mr. Wilson argues that Horizon, the Union, or its leaders stole his retirement or inheritance, that may potentially be wrongdoing. *See* Resp. to OSC at 10, 14 (contending that the Union "may have financial incentive, as may Horizon and the named Union leaders, . . . to hide benefit package and inheritance information from the Plaintiff in order to keep those assets long term"; also contending that his retirement package "worth millions . . . has simply vanished"). But that is not sex-trafficking related conduct that is illegal under the TVPRA.

## II.       CONCLUSION

For the foregoing reasons, the Court discharges the OSC but grants Horizon's motion to dismiss. Subject matter jurisdiction is lacking.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

To the extent Mr. Wilson has argued that he should be permitted to amend so as to add a federal cause of action (thus giving rise to federal question jurisdiction), the Court finds amendment futile.  Mr. Wilson has failed to make a sufficient showing that he could plead a viable claim for violation of the TVPRA as to any defendant.  For the same reasons, the Court **DENIES** Mr. Wilson's motion to appoint counsel.  *See* Docket No. 25 (motion for leave to obtain legal counsel).

Accordingly, the Court directs the Clerk of the Court to enter a final judgment in accordance with this order and close the file in the case.

This order disposes of Docket No. 17.

**IT IS SO ORDERED**.

Dated: March 5, 2026

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

7